NATIONAL BANK OF
CANADA, Plaintiff,

v.

ARTEX INDUSTRIES, INC., Defendant.

ARTEX INDUSTRIES, INC.,
Third-Party Plaintiff,

v.

SEAPORT MARKETPLACE, INC.,
Third-Party Defendant.

No. 85 Civ. 1499 (LLS).

United States District Court,
S.D. New York.

Jan. 29, 1986.

Drinker, Biddle & Reath, New York City (J. Portis Hicks and Gregg J. Borri, of counsel), for plaintiff.

Harold M. Cohen, Maplewood, N.J., for defendant and third-party plaintiff Artex Industries, Inc.

Kelley, Drye & Warren, New York City (Jeffrey Amerman, of counsel), for third-party defendant Seaport Marketplace, Inc.

## OPINION AND ORDER

STANTON, District Judge.

Plaintiff National Bank of Canada ("NBC") sues Artex Industries, Inc. ("Artex") for $79,600 which NBC paid on Artex's behalf to a supplier of granite, and then by mistake credited back to Artex. As appears below, there is no material factual dispute about this claim, and NBC is entitled to summary judgment in its favor.

Defendant Artex has impleaded Seaport Marketplace, Inc. ("Seaport"),[1] for whom Artex obtained the granite and performed substantial other work for which Artex claims there is an unpaid outstanding balance of $420,000 plus restitution of the $79,600 worth of granite. Seaport has moved to dismiss this third-party claim as being substantially unrelated to the main

---

**1.** Artex originally impleaded Tishman Construction Company of New York and The Rouse Company. By a stipulation dated September 17, 1985 Seaport was substituted as the third-party defendant.

claim by NBC and, as appears below, Seaport's motion is granted.

NBC is a Canadian corporation; Artex is a New Jersey corporation. The court has diversity jurisdiction under 28 U.S.C. § 1332(a).

### Facts

In 1982 Artex entered into a contract with Tishman Construction Corporation ("Tishman") to deliver and install granite at the Seaport Market Place in New York City. In connection with that contract Artex ordered granite from Granit Bussiere, Inc. ("Granit"), a Canadian company, for an agreed purchase price of $79,600. (Plaintiff's Rule 3(g) Statement, ¶ 1; Third-Party Complaint, ¶¶ 8, 9.)

In June, 1983 Granit allegedly informed Artex that it would not ship any granite to Artex unless payment was guaranteed (Third-Party Complaint, ¶ 12), and on June 7, 1983 Tishman promised to make good to Artex the $79,600 for the granite, if Artex would pay Granit. (Third-Party Complaint ¶ 13.)

On June 8, 1983 Artex directed Chemical Bank of New York ("Chemical Bank") to pay $79,600 to Granit. (Plaintiff's Rule 3(g) Statement, ¶ 2; Third-Party Complaint, ¶ 14.) Soon thereafter Morgan Guaranty Trust Company of New York ("Morgan Guaranty"), at the direction of Chemical Bank, transferred $79,600 to NBC with instructions to transfer the funds to Granit. (Plaintiff's Rule 3(g) Statement, ¶ 3.)[2] NBC proceeded to pay $79,600 to Granit's account. (Plaintiff's Rule 3(g) Statement, ¶ 6.) NBC's New York branch, however, in the mistaken belief that NBC had been unable to transfer the funds to Granit, returned $79,600 to Morgan Guaranty for credit to Artex. (Plaintiff's Rule 3(g) Statement, ¶ 7; Answer, ¶ 7.) NBC was therefore out of pocket $79,600. (*ibid.*) Artex alleges that on June 8, 1983, after Tishman allegedly failed to guarantee or reimburse Artex's payment to Granit, it instructed Chemical Bank to reverse the transfer of funds to Granit (Third-Party Complaint, ¶ 16), but apparently Granit understandably kept the funds.

The granite ordered by Artex from Granit was delivered and installed at the Seaport Market Place in July, 1983. (Plaintiff's Rule 3(g) Statement, ¶ 9; Third-Party Complaint, ¶ 21.) When NBC discovered that it had mistakenly returned the $79,600 to Artex it attempted unsuccessfully to obtain reimbursement from Morgan Guaranty and Chemical Bank, and on August 21, 1984 NBC wrote to Artex requesting repayment of the funds. (Plaintiff's Rule 3(g) Statement, ¶¶ 10–12.)

In its complaint NBC alleges that as a result of NBC's mistaken payment and Artex's refusal to reimburse NBC, Artex converted $79,600 and was unjustly enriched in that amount. (Complaint, ¶¶ 8–11, 14–16.)[3] In its third-party complaint Artex claims that Seaport owes it $420,465 for work done pursuant to the contract, for work performed pursuant to change orders authorized by Tishman, and for other work not called for in the contract or change orders performed by Artex. (Third-Party Complaint, ¶¶ 25–28.) In addition Artex claims that Seaport was unjustly enriched at least in the amount of $79,600, the value of the stone installed by Artex at the Sea-

---

**2.** Artex has not filed a "statement of material facts as to which it is contended that there exists a genuine issue to be tried" as required of the non-movant in a summary judgment motion by Rule 3(g) of the Civil Rules for the Southern and Eastern Districts of New York. Rule 3(g) provides that "[a]ll material facts set forth in the statement [of material facts] required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." *See Woods v. State of New York,* 469 F.Supp. 1127, 1129 n. 2 (S.D.N.Y.1979), *aff'd mem.,* 614 F.2d 1293 (2d Cir.1979) (accepting movant's un-

controverted Rule 9(g) [predecessor of present Rule 3(g)] statements of fact as admitted); *Capano Music v. Myers Music, Inc.,* 605 F.Supp. 692, 697 (S.D.N.Y.1985) (same).

**3.** NBC also alleged that Artex acted maliciously, recklessly, and in wilful disregard of NBC's rights and sought $50,000 in punitive damages. (Complaint, ¶¶ 12, 13, 16.) NBC appears to have abandoned its claim for exemplary relief in its motion for summary judgment. *See* Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment at 1, 14.

port Market Place. (Third-Party Complaint, ¶¶ 29–32.)

### Seaport's Motion to Dismiss the Third-Party Complaint

Fed.R.Civ.P. 14 provides that "[a]t any time after commencement of the action a defending party ... may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." The rule was "designed to eliminate multiple and repetitive lawsuits and trials by allowing for a single presentation of evidence when multiple claims turn upon identical or similar proof." *Sirota v. Solitron Devices, Inc.*, 97 F.R.D. 732, 736 (S.D.N.Y.1983); *see also Oliner v. McBride's Industries, Inc.*, 106 F.R.D. 14, 20 (S.D.N.Y.1985). The interest in judicial economy which underlies the rule is advanced, of course, only when "the defendant's right against the third party is merely the outgrowth of the same aggregate or core of facts which is determinative of the plaintiff's claim." *Dery v. Wyer*, 265 F.2d 804, 807 (2d Cir.1959).

■ Further, "[t]he mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claims is not enough." *Farmers Production Credit Ass'n of Oneonta v. Whiteman*, 100 F.R.D. 310, 312 (N.D.N.Y. 1983) (quoting 6 Wright & Miller, *Federal Prac. & Pro.* § 1446, at 257 (1971)). The essential purpose of Rule 14 requires that defendant's third-party claim derive from the main claim, and that "the claim of liability to the defendant and third-party plaintiff accrue only upon a finding of defendant's liability to the plaintiff on the main claim." *Index Fund, Inc. v. Hagopian*, 417 F.Supp. 738, 744 (S.D.N.Y.1976).

■ The requirements for impleader under Rule 14 are not met here. As Artex sets forth in its third-party complaint, its claim is for "monies due and owing to [Artex] for work done pursuant to a contract with Tishman in which the stone sent by [Granit] ... was used and installed." (Third-Party Complaint, ¶ 1.) It is true that the funds originally transferred by Artex

through NBC to Granit were in payment for stone to be used on the Seaport Market Place project. However, that minimal overlap between the main claim and the otherwise unrelated disputes involved in the third-party claim is not enough to allow the latter to stand. *Farmers Production*, 100 F.R.D. at 312. The outcome of the third-party claim must be contingent on the outcome of the main claim, and here Seaport's liability to Artex under their contract involves many issues unconnected with NBC's claim for the return of a mistaken payment. Therefore Artex's third-party complaint is dismissed, without prejudice.

### NBC's Motion for Summary Judgment

A party is entitled to summary judgment under Fed.R.Civ.P. 56 only upon a demonstration "(1) that there is no genuine issue of material fact to be tried in the case and (2) that the moving party is entitled to judgment as a matter of law." *Seymore v. Reader's Digest Ass'n, Inc.*, 493 F.Supp. 257, 262 (S.D.N.Y.1980); *see also Town of Orangetown v. Ruckelshaus*, 740 F.2d 185, 190 (2d Cir.1984); *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 115 (2d Cir.1984). The moving party bears the burden of showing the absence of any material issues of fact, and in reviewing a Rule 56 motion a district court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985).

■ Under these well-established standards NBC is entitled to summary judgment on its claim for money paid by mistake. Though Artex has not submitted a Rule 3(g) statement to controvert NBC's statement of material facts, Artex has submitted two affidavits of Peter Fuller, president of Artex, and one affidavit of Aida Fuller, vice-president of Artex. Nothing in these affidavits disputes or is inconsistent with the statements of material fact in NBC's Rule 3(g) statement. Thus no issue of material fact is raised.

NBC is entitled to judgment as a matter of law. Under New York law "a party who has made a mistaken payment to another based upon a unilateral mistake of fact may recover the payment unless the payee has changed his position to his detriment in reliance upon the mistaken payment." *Bank Saderat Iran v. Amin Beydoun, Inc.*, 555 F.Supp. 770, 773 (S.D.N.Y.1983); *see also Bank Leumi Trust Co. of New York v. Bally's Park Place, Inc.*, 528 F.Supp. 349, 354 (S.D.N.Y.1981); *Liberty Mutual Ins. Co. v. Newman*, 92 App. Div.2d 613, 459 N.Y.S.2d 806, 808 (1983); *Manufacturers Trust Co. v. Diamond*, 17 Misc.2d 909, 186 N.Y.S.2d 917, 919 (Sup. 1959). Artex does not contest that NBC paid Artex by mistake. (Answer, ¶ 7.) On that fact alone, absent a valid affirmative defense, NBC is entitled to the return of the mistaken payment.

■ Artex asserts five affirmative defenses in its answer. The first two affirmative defenses claim that NBC's negligence in making and failing to cancel the payment precludes its recovery. (Answer, ¶¶ 17, 18.) It is well-settled, however, "that money paid under a mistake of fact may be recovered back however negligent that party paying may have been in making the mistake...." *Valley Bank of Nevada v. Bank of Commerce*, 74 Misc.2d 195, 343 N.Y.S.2d 191, 194 (Civ.Ct.1973) (quoting *National Bank of Commerce of New York v. National Mechanics Banking Ass'n of New York*, 55 N.Y. 211 (1873)); *see also Citibank, N.A. v. Warner*, 113 Misc.2d 748, 449 N.Y.S.2d 822, 823 (Sup.Ct.1981); *Manufacturers Trust*, 186 N.Y.S.2d at 919; *Bank Leumi*, 528 F.Supp. at 354.

■ Artex's Third Affirmative Defense alleges that NBC's claim is barred by the doctrines of laches and estoppel because "[p]rior to the institution of this suit, plaintiff never made any demand upon defend-ant whatsoever." (Answer, ¶ 19.) NBC asserts that it did make a demand for repayment to Artex by a letter dated August 21, 1984, and submits a copy of that letter. (Plaintiff's Rule 3(g) Statement, ¶ 12; Affidavit of Clive Skelton, ¶ 8 and Exhibit 1 thereto.) When the movant in a summary judgment motion provides factual support for its allegations in the form of an affidavit, the adverse party may not defeat the motion by resting on mere conclusory allegations with no supporting legal arguments or factual submissions. *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978); *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984). Artex's Third Affirmative Defense fails, in the context of this summary judgment motion, for lack of factual or legal support.

■ Artex's Fourth Affirmative Defense states that NBC failed to join Granit as an indispensable party to the action. (Answer, ¶ 20.) This defense fails because Artex has made no showing that Granit has an unprotected interest in the case.[4] *R.G. Group*, 751 F.2d at 77; *cf. Ilan-Gat Engineers, Ltd. v. Antigua International Bank*, 659 F.2d 234, 241 (D.C.Cir.1981) (burden of showing prejudice to absent party is on movant seeking dismissal for failure to join indispensable party); *In re Caesar's Palace Securities Litigation*, 360 F.Supp. 366, 395 (S.D.N.Y.1973) (allegations of indispensability without documentation are insufficient).

■ Artex's Fifth Affirmative Defense states: "This Court lacks jurisdiction based upon the fact that the plaintiff is in Canada, the defendant is in New Jersey, and that the acts complained of took place in New Jersey and Canada." (Answer, ¶ 21.) Despite the use of the term "jurisdiction," this appears to be a defense based

---

4. Fed.R.Civ.P. 19(a) requires a party to be joined:

if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

upon improper venue.[5] Proper venue is determined by 28 U.S.C. § 1391, which provides that diversity cases may be brought only in the judicial district where all plaintiffs or all defendants reside, or where the claim arose. For venue purposes a corporation resides in a district where it is "doing business." 28 U.S.C. § 1391(c). A foreign corporation is doing business in a judicial district if it "is 'engaging in any substantial business operations' within [the] jurisdiction." *Pocahontas Supreme Coal Co., Inc. v. National Mines Corp.*, 90 F.R.D. 67, 69 (S.D.N.Y.1981) (quoting *United States v. Scophony*, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948)); *see also Arbitron Co. v. E.W. Scripps, Inc.*, 559 F.Supp. 400, 401 (S.D.N.Y.1983). Here Artex entered into a contract to perform work within the Southern District and was engaged in that work at least between March, 1983 and July, 1983. (Third-Party Complaint, ¶¶ 8, 21; Affidavit of Peter Fuller, Sept. 10, 1985, ¶¶ 3, 12.) Thus Artex was engaged in "substantial business operations" within this district on or about June 10, 1983 when NBC's cause of action accrued, *see* Complaint, ¶ 7, and therefore venue is proper in this court under 28 U.S.C. § 1391. *See First Pullen Services, Inc. v. A.G. Becker-Kipnis & Co.*, 507 F.Supp. 770, 774 n. 2 (S.D.Fla.1981) ("doing business" standard must be satisfied when cause of action accrued).

NBC apprehends that Artex, through the Fuller affidavits, may be raising a new defense: that Artex detrimentally relied on NBC's mistaken payment and therefore should not be obliged to repay. (Plaintiff's Reply Memorandum of Law at 2.)[6] NBC correctly points out that Artex did not plead the reliance defense in its answer, and that the "[f]ailure to plead an affirmative defense in the answer results in 'the waiver of that defense and its exclusion from the case.'" *Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir.1984) (quoting 5 Wright & Miller, *Federal Prac. and Pro.* § 1278 at 339 (1969)). The reliance apparently asserted by Artex is an affirmative defense, the burden of proof of which is on the defendant. *See Bank Saderat*, 555 F.Supp. at 774; *Citibank*, 449 N.Y.S.2d at 824.

In any case, even if the reliance defense were not waived, nothing in the Fuller affidavits indicates that Artex changed its position to its detriment in reliance upon NBC's payment. The detriment asserted by Artex is that it worked on the Seaport Market Place project for "30 to 40 days, in effect without payment" from Seaport. (Affidavit of Peter Fuller, Oct. 8, 1985, ¶ 5.) Artex may bring an action against Seaport, as it has sought to do here by impleader, for the alleged arrears. Further, all of the averments in Peter Fuller's affidavits indicate that Artex remained on the project and built up a large account receivable with Seaport in reliance on Tishman's assertion that it had paid Granit for the stone, or that Tishman would reimburse Artex for its payment. (Affidavit of Peter Fuller, Sept. 19, 1985, ¶¶ 10, 12, 15, 16, 18; Affidavit of Peter Fuller, Oct. 8, 1985, ¶¶ 4, 5, 8, 11.) Nothing supports an inference that it was NBC's mistaken payment which kept Artex on the job.

There is no issue of material fact, no valid defense, and NBC is entitled to judgment as a matter of law. Accordingly, its motion for summary judgment is granted.

### Interest

NBC seeks interest on the $79,600, computed from August 21, 1984 when NBC demanded repayment.

---

**5.** If Artex's Fifth Affirmative Defense is intended to challenge personal jurisdiction, Artex waived the defense by asserting a third-party claim. *Merz v. Hemmerle*, 90 F.R.D. 566, 569 (E.D.N.Y. 1981). If the defense challenges subject matter jurisdiction, the assertion in paragraph 21 of Artex's answer appears to confirm the existence of diversity of citizenship between the parties, and the action is for over $10,000, thus meeting the requirements of 28 U.S.C. § 1332(a).

**6.** Since Artex failed to submit an answering memorandum of law as required in Rule 3(b) of the Civil Rules for the Eastern and Southern Districts of New York, the particular legal theory thought to be sustained by the Fuller affidavits, which do not make that clear, is left to speculation.

Whether interest should be included in NBC's recovery is controlled by New York law. *In re Sabre Corp.*, 299 F.Supp. 97, 101 (S.D.N.Y.1969). The cause of action for recovery of money paid by mistake is based upon the principle of unjust enrichment, and as such is undoubtedly equitable in nature. *Blue Cross of Central New York, Inc. v. Wheeler*, 93 App.Div.2d 995, 461 N.Y.S.2d 624, 626 (1983); *Paramount Film Distributing Corp. v. State of New York*, 30 N.Y.2d 415, 334 N.Y.S.2d 388, 393, 285 N.E.2d 695, 698 (1972), *modified on other grounds*, 31 N.Y.2d 678, 336 N.Y.S.2d 911, 288 N.E.2d 811 (1972), *cert. denied*, 414 U.S. 829, 94 S.Ct. 57, 38 L.Ed.2d 64 (1973). Therefore NBC's claim to prejudgment interest on its recovery is governed by New York C.P.L.R. § 5001(a), which provides that "in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion." *See Valle v. Joint Plumbing Industry Board*, 623 F.2d 196, 206–207 (2d Cir.1980) (interest award is discretionary in district court under New York law).

The court declines to award prejudgment interest to NBC. It was NBC's error which created the dispute, and the court will follow the New York courts, which do not award interest in similar cases involving the recovery of mistaken payments since the "error which necessitated this litigation was the plaintiff's and it would be unfair to charge the defendant" for the lost interest. *Allcity Ins. v. Bankers Trust Company of Albany*, 80 Misc.2d 899, 364 N.Y.S.2d 791, 794; *see also Liberty Mutual*, 459 N.Y.S.2d at 809.

### Conclusion

Third-party defendant Seaport's motion to dismiss the third-party complaint brought by Artex is granted without prejudice. NBC's motion for summary judgment is granted, and judgment shall be entered in its favor in the amount of $79,-600 plus costs.

So ordered.